# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOSEPHINE WASHINGTON, | ) | Case No. 11-41288 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOSEPHINE WASHINGTON and | ) | |
| CHESTER PARKS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 11-4114 |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, AS TRUSTEE FOR ARGENT | ) | |
| SECURITIES INC., ASSET-BACKED PASS | ) | |
| THROUGH CERTIFICATES, | ) | |
| SERIES 2006-W, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On April 21, 2011, the Plaintiffs, Debtor Josephine Washington and Chester Parks filed a three-count complaint seeking: 1) a determination that the Defendant's asserted security interest in the Plaintiffs' residence is invalid; 2) the removal of the cloud on the title allegedly resulting from the Defendant's asserted interest in the property; and 3) the imposition of sanctions against the Defendant for alleged violations of the automatic stay. Both parties have moved for summary judgment.

For the reasons stated below, the Court will grant the Defendant's motion for summary judgment on all counts of the Plaintiffs' complaint and will deny the Plaintiffs' motion for summary judgment.

## BACKGROUND

The Court limits its recitation of the facts to those germane to the Court's holding. Notably, the Court omits many of the facts surrounding alleged violations of a "Pooling and Servicing Agreement" to which Deutsche is a party. The Plaintiffs argue that Deutsche Bank lacks standing

to enforce the note and deed of trust at issue as a result of those violations. As explained below, the alleged violations of the Pooling and Service Agreement are irrelevant to Deutsche Bank's standing here.

On January 13, 2006, Chester Parks and Josephine Washington borrowed $200,000.00 from Argent Mortgage Company, LLC, and executed a thirty-year, fixed rate note ("Note") payable to Argent. To secure payment of the Note, Parks and Washington executed a deed of trust in favor of Argent ("Deed of Trust"), granting Argent a security interest in real property commonly known as 1301 Sawgrass Drive, Grain Valley, Missouri 64029, and more particularly described as: LOT 136, VALLEY HILLS ESTATES 2ND PLAT, A SUBDIVISION IN GRAIN VALLEY, JACKSON COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF (the "Property"). The Deed of Trust was recorded with the Jackson County, Missouri Recorder of Deeds on January 20, 2006.

On or about January 19, 2006, Argent endorsed the Note in blank, without recourse, and executed an Assignment of Deed of Trust in blank (i.e., the assignment did not designate an assignee). Possession of both of these documents as well as a conformed copy of the original Deed of Trust was transferred to Deutsche Bank. The Letter of Transmittal identified Parks and Washington as the borrowers and identified the Loan Number as 0092668193-9606. Counsel for Deutsche Bank attests that the original Note and original Deed of Trust are currently being held in her law firm's vault and are available for inspection.

The loan to the Plaintiffs was among hundreds of loans included in the Argent Securities Inc. Asset-Backed Pass-Through Certificates, Series 2006-W3 pool of assets (the "Trust Fund"). Certificates in the Trust Fund were issued pursuant to a Pooling and Servicing Agreement ("PSA") dated March 1, 2006, among Argent Securities, Inc., as Depositor, Ameriquest, as Master Servicer, and Deutsche Bank, as Trustee.

On April 4, 2007, Argent assigned the Deed of Trust and Note to Deutsche Bank without recourse (the "Deutsche Bank Assignment"). The Deutsche Bank Assignment was recorded with the Jackson County, Missouri Recorder of Deeds on April 18, 2007. On February 11, 2009, Argent again assigned the Deed of Trust and Note to Deutsche Bank (the "Second Deutsche Bank

Assignment").[1]  The Second Deutsche Bank Assignment was recorded with the Jackson County, Missouri Recorder of Deeds on February 17, 2009.

Argent transferred the right to service the Loan, including the right to collect payments, to AMC Mortgage Services, Inc. ("AMC"), effective January 19, 2006.  On September 14, 2007, AMC transferred the right to service the Loan, including the right to collect payments, to Citi Residential Lending Inc., effective October 1, 2007.  On January 23, 2009, Citi transferred the right to service the Loan, including the right to collect payments, to American Home Mortgage Servicing, Inc. ("AHMSI") effective February 11, 2009.  AHMSI is the current servicer of the Loan.

AHMSI notified Washington and Parks that it was the current servicer of the Loan and provided a contact address for AHMSI at P.O. Box 631730, Irving, Texas 75063-1730.

Washington and Parks are in default of their obligations under the Note and Deed of Trust for failure to make payments of principal and interest when such payments became due.  As of June 7, 2011, Washington and Parks were approximately $51,000.00 delinquent in Loan payments, plus AHMSI/Deutsche Bank had advanced approximately $21,000.00 for taxes and insurance on the Property.  Additional fees, costs and charges have accrued on the Loan balance pursuant to the terms of the Note and Deed of Trust.[2]

**Washington's Multiple Chapter 13 Bankruptcy Filings**

On April 20, 2007, Washington filed a Chapter 13 bankruptcy petition in this Court, case number 07-41282 (the "2007 Bankruptcy").  On February 19, 2008, Deutsche Bank, through its prior loan servicer, Citi, filed a Motion for Relief From Automatic Stay and Relief From the Co-Debtor Stay, wherein Citi, on behalf of Deutsche Bank, asserted that it was the holder of a secured claim based on the Note and Deed of Trust, that Washington had failed to make post-petition payments in accordance with her Chapter 13 plan, and requested relief from the automatic stay and co-debtor stay to foreclose the Deed of Trust [Docket No. 44] (the "First Stay Relief Motion").

---

[1] No explanation has been given for the second, redundant assignment.

[2] According to a Stay Relief Motion filed by Deutsche Bank on April 5, 2011, the monthly mortgage payments were delinquent from July 1, 2008, and the total owed on the debt was $262,502.14, of which $196,938.11 was principal. In her bankruptcy schedules, Washington valued the property at $250,000.

3

On March 5, 2008, Washington filed an answer to the First Stay Relief Motion. Neither Parks nor the Trustee filed an answer or response, although both were served with the First Stay Relief Motion.

On April 21, 2008, the Court held a hearing on the First Stay Relief Motion, and on April 22, 2008, the Court entered a Consent Order and Stipulation in Settlement of Motion for Relief entered into between Washington and Citi to settle the First Stay Relief Motion [Docket No. 56]. The Order provided, *inter alia*, that Washington would tender $4,493.67 by April 21, 2008, and pay an additional $324.65 per month for 6 consecutive months commencing May 15, 2008. Washington consented to Citi obtaining relief from the stay if she failed to comply with these terms.

Upon Washington's failure to meet her obligations under the Consent Order and after 10 days' notice of her default, the Court entered on June 10, 2008 an "Order Granting Relief After Default of Settlement Order" (the "First Stay Relief Order") in which the Court found that "Movant has a security interest in the [Property]," and terminated the automatic stay to permit "Movant to foreclose its security interest in the [Property] and to pursue its remedies in accordance with the security agreement and state law." [Docket No. 59]. Neither Washington nor Parks appealed the First Stay Relief Order.

The 2007 Bankruptcy was ultimately dismissed on February 8, 2010, due to Washington's failure to file a confirmable plan. Deutsche Bank did not foreclose on the Property after the entry of the First Stay Relief Order, though, because Washington and Parks were pursuing a loan modification.

On February 11, 2010, Washington filed her second Chapter 13 bankruptcy petition, case number 10-40531 (the "2010 Bankruptcy"). This case was short-lived. On March 17, 2011, the Court dismissed the 2010 Bankruptcy on the Trustee's motion to dismiss based on a default in plan payments.

On March 24, 2011, Washington filed the current Chapter 13 bankruptcy petition, case number 11-41288 (the "2011 Bankruptcy").

On April 5, 2011, Deutsche Bank filed a Motion to Dismiss, or in the Alternative for Relief From the Automatic Stay and Relief From Co-Debtor Stay (the "Second Stay Relief Motion"). Washington, Parks, and the Chapter 13 trustee were properly served with the Second Stay Relief Motion. On April 6, 2011, Deutsche Bank filed a Motion for Expedited Hearing on the Second Stay

4

Relief Motion, which the Court granted. On April 11, 2011, the Court held a hearing on the Second Stay Relief Motion, and on April 13, 2011, the Court entered an Order (the "Second Stay Relief Order") in which the Court found that "Movant has a security interest in the [Property]," and that "there exists a delinquency in mortgage payments and fees/costs." However, the Court conditioned Deutsche Bank's entitlement to move forward with foreclosure on Washington's default in plan payments [Docket No. 30]. The Second Stay Relief Order was not appealed.

## THE ADVERSARY PROCEEDING

As earlier noted, on April 21, 2011, the Plaintiffs filed their Complaint consisting of three counts. The crux of the first and second counts is that Deutsche Bank does not have a perfected secured claim in the Property, cannot enforce the Note, and lacks standing to foreclose the Deed of Trust because the Note was not "executed, indorsed, transferred, assigned or delivered" in accordance with the PSA. Plaintiffs therefore request that the Court find that the Deed of Trust is either void or satisfied and order that it be stricken from the land records. In the third count, Plaintiffs allege that Deutsche Bank's "efforts to collect the underlying debt are a prior and continuing violation of the automatic stay," and seek an award of actual damages, punitive damages, reasonable attorney's fees and costs for the alleged stay violation. However, Plaintiffs have not set forth any specific collection activity that they believe violated the automatic stay.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] A court should grant a motion for summary judgment unless the facts, when viewed in the light most favorable to the nonmoving party and all reasonable inferences which can be drawn therefrom, demonstrate that some genuine issue of fact exists.[4]

---

[3] Fed. R. Civ. P. 56(c).

[4] *See Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).

5

Applying this standard, the Court finds that Deutsche Bank is entitled to summary judgment on all counts of the Plaintiffs' complaint. Accordingly, the Plaintiffs' motion for summary judgment will be denied.

## DISCUSSION

As a preliminary matter, the Court disposes of Count III of the Plaintiffs' Complaint. The Complaint fails to specifically identify the conduct the Plaintiffs allege violated the automatic stay, and the Plaintiffs' response to the Defendant's motion for summary judgment was also silent on this issue. Consequently, the Defendant is entitled to summary judgment on this Count.

I.     **Counts I and II of Plaintiffs' Complaint are Barred By Res Judicata, Collateral Estoppel, and Law of the Case.**

Put simply, the Court has entered two orders – one with Washington's consent – finding that Deutsche Bank has a valid security interest in the Property. Those orders are final and binding on the Plaintiffs. And the present suit by the Plaintiffs challenging the validity of Deutsche Bank's security interest constitutes an impermissible collateral attack on those orders – under multiple preclusion doctrines.

Most immediately, Counts I and II are barred by the "law of the case" doctrine. The law of the case doctrine bars the re-litigation of a settled issue in a case.[5] The doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy."[6] In other words, the doctrine posits "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[7]

The issue of whether Deutsche Bank has a valid security interest in the Property was settled in this case on April 13, 2011, when, after a hearing on the matter at which Washington was represented by counsel, the Court entered the Second Stay Relief Order which specifically found

---

[5] *See United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995).

[6] *Id.*

[7] *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983).

that Deutsche Bank "has a security interest in the [Property]." The Plaintiffs did not appeal or otherwise challenge this order. To the contrary, Washington consented to and benefitted from the specific terms of the order which conditioned Deutsche Bank's relief from the stay on her default in plan payments [Docket No. 30].

Counts I and II are also barred by the doctrines of res judicata and collateral estoppel. The doctrine of res judicata bars the re-litigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.[8] "Whether a cause of action is the same for res judicata purposes depends on the facts presented, not the legal violations alleged."[9] Collateral estoppel, also known as "issue preclusion," provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.[10]

Here, the First and Second Stay Relief Orders are entitled to res judicata and collateral estoppel effect.[11] They were entered by a court of competent jurisdiction – this Court – and both are final judgments on the merits.[12] The parties, or those in privy with them, are identical between the First and Second Stay Relief Motions and the Complaint. And finally, the First and Second Stay Relief Motions and the Complaint involve the same facts and ultimate issue, *i.e.*, Deutsche Bank's right to enforce the Note and Deed of Trust. Plaintiffs had the opportunity to challenge Deutsche Bank's right to enforce the Note and Deed of Trust in the context of the First and Second Stay Relief

---

[8] *Lundquist v. Rice Memorial Hosp.*, 238 F.3d 975, 977 (8th Cir.2001).

[9] *Lingenfelter v. Stoebner*, 2005 WL 1225950 at *5 (D.Minn. May 23, 2005) (citation omitted).

[10] *Anderberg–Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir.1997). *See also Chavez v. Weber*, 497 F.3d 796, 803 (8th Cir.2007).

[11] The Consent Order and Stipulation in Settlement of Motion for Relief entered in the 2007 Bankruptcy [Docket No. 56] is also entitled to res judicata effect. Although the order did not expressly state that Deutsche Bank had a security interest in the Property, that finding was necessarily implied by the order which permitted Citi (Deutsche Bank's privy) to obtain an order lifting the stay if Washington failed to cure her default within ten days following written notice.

[12] *See Pollack v. Federal Deposit Ins. Corp.* (*In re Monument Record Corp.*), 71 B.R. 853, 857 (Bankr. M.D. Tenn. 1987)(an order entered by the bankruptcy court on a request for relief from the automatic stay is a final order)(citations omitted).

Motions but chose not to do so. Therefore, the Court's prior determination in the First and Second Stay Relief Orders that Deutsche Bank has a valid security interest in the Property and can enforce the Note and Deed of Trust is entitled to res judicata and collateral estoppel effect. The Plaintiffs are thus barred from challenging that determination here.

Although the Defendant is entitled to summary judgment on the basis of estoppel alone, the Defendant prevails on the merits as well.

## II. Deutsche Bank has standing to enforce the Note and Deed of Trust.

The Plaintiffs make several arguments why Deutsche Bank is not the proper party in interest based on various alleged violations of the PSA, *e.g.*, that Argent Securities, Inc., failed to comply with the "true sale" or other terms of the PSA. Aside from the fact that the Plaintiffs lack standing to seek relief for violations of the PSA,[13] those violations (even if they're true) are irrelevant to Deutsche Bank's standing to enforce the Note under the Missouri Uniform Commercial Code.[14] And despite the prolixity of the Plaintiffs' arguments, the analysis is straightforward.

The Note is a negotiable instrument and is therefore subject to the Missouri Uniform Commercial Code.[15] Under Mo. Rev. Stat. § 400.3–301, a "Person entitled to enforce" an instrument is defined as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 400.3-309 or 400.3-418(d). <u>A person may be a person entitled to enforce the instrument even though the person is not the owner of the</u>

---

[13] *See In re Smoak*, 2011 WL 4502596, *5-6 (Bankr. S.D. Ohio Sept. 28, 2011) (holding that debtors under securitized notes lacked standing to raise violations of the pooling and servicing agreement); *Correia v. Deutsche Bank Nat'/ Trust Co.* (*In re Correia*), 452 B.R. 319 (B.A.P. 1st Cir. 2011) (same); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009) (holding that debtors, as makers of the notes, were not parties or third-party beneficiaries to the pooling and servicing agreement and, therefore, lacked standing). *See also Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010)(obligor cannot sue for breach of contract based upon a pooling and servicing agreement to which it is not a party).

[14] *See, e.g., In re Smoak*, 2011 WL at *6-8 (rejecting a similar argument by a debtor and holding that the ability of a Trustee of a securitization trust to enforce the mortgage note was unaffected by alleged noncompliance with the terms of a pooling and servicing agreement governing the securitization trust, and that the pooling and servicing agreement could not eliminate the rights of a holder under the Ohio Uniform Commercial Code (substantially similar to the Missouri Uniform Commercial Code) to enforce the mortgage note).

[15] *See* Mo. Rev. Stat. § 400.3-104.

8

instrument or is in wrongful possession of the instrument."[16] "Holder" with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer.[17] If a negotiable instrument has been endorsed in blank,[18] as the Note in this case has been, the instrument becomes payable to "bearer" and may be negotiated by transfer of possession alone."[19] "If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."[20] Finally, under Missouri law, a party entitled to enforce a note is also entitled to enforce the deed of trust securing that note, regardless of whether that transfer is recorded.[21] "Possession of the note insures that this creditor, and not an unknown one, is the one entitled to exercise rights under the deed of trust, and that the debtor will not be obligated to pay twice."[22]

Deutsche Bank is in possession of the Note and has been since it was transferred from Argent in January 2006. Argent endorsed the Note in blank so it is now a bearer note. Therefore, Deutsche Bank is entitled to enforce the Note as the party in physical possession of it. And under Missouri law, Deutsche Bank is entitled to enforce the Deed of Trust securing the Note, regardless of whether it is the assignee of record (although in this case it is in possession of the assignment as well as the assignee of record pursuant to the April 4, 2007 Deutsche Bank Assignment). Consequently, Deutsche Bank is entitled, as a matter of law, to enforce the Note and the Deed of Trust, and summary judgment in favor of the Defendant and against the Plaintiffs is warranted on the merits of Counts I and II of the Plaintiffs' Complaint.

---

[16] Mo.Rev.Stat. § 400.3–301 (emphasis added). *See also In re Hwang* 438 B.R. 661, 665 (C.D.Cal.,2010) (holding that the holder of a note has the right to enforce the note, regardless of whether the holder is the owner of the note or is in wrongful possession of the note). "It would seem relatively straightforward, then . . . the party with the right to enforce a claim on the note . . . is the real party in interest on this Motion." *Id.*

[17] Mo. Rev. Stat. § 400.1–201(20)

[18] A "blank endorsement" is an endorsement that does not identify a person to whom the instrument is payable. See Mo. Rev. Stat. § 400.3-205(b).

[19] Mo. Rev. Stat. § 400.3-205(b)`

[20] Mo. Rev. Stat. § 400.3–201(b).

[21] *See In re Tucker*, 441 B.R. 638, 644-45 (Bankr. W.D. Mo. 2010) (citing *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. Ct. App. 2009)).

[22] *In re Box*, 2010 WL 2228289, *5 (Bankr. W.D. Mo. June 3, 2010).

## CONCLUSION

For the reasons stated above, the Defendant is entitled to summary judgment on all counts of the Plaintiffs' Complaint and the Complaint will be dismissed with prejudice. The Plaintiffs' Motion for Summary Judgment will be denied.

Costs shall be taxed to Plaintiffs.

SO ORDERED this 1st day of December 2011.

/s/ Jerry W. Venters
Honorable Jerry W. Venters
United States Bankruptcy Judge

Copies provided electronically to counsel of record